UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EXCEPTIONAL DENTAL OF
LOUISIANA, LLC, *et al.*

VERSUS

BANKERS INSURANCE COMPANY

CIVIL ACTION

NO. 22-3

SECTION M (1)

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendant Bankers Insurance Company ("Bankers").[1]  Plaintiffs Exceptional Dental of Louisiana, LLC, Bam Management Group, LLC, Affordable Smiles of Baton Rouge, LLC, and Affordable Smiles of Hammond, LLC (collectively, "Plaintiffs") respond in opposition.[2]  The parties also submit supplemental memoranda[3] in support of their respective positions pursuant to the Court's July 25, 2022 order.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting Bankers' motion and dismissing Plaintiffs' claims.

## I.     BACKGROUND

This is an insurance coverage dispute involving Plaintiffs' claims for business interruption losses resulting from the closure of their dental clinics due to the COVID-19 pandemic.  Plaintiffs own and operate a number of dental clinics throughout southeast Louisiana.[5]  Each of the Plaintiffs was covered under an all-risk commercial property insurance policy issued by Bankers and in effect at all times relevant to the action; the terms of the policies are identical in all material

---

[1] R. Doc. 10.
[2] R. Doc. 11.
[3] R. Docs. 13; 14; 15; 16.
[4] R. Doc. 12 (establishing briefing schedule for the parties to submit supplemental memoranda addressing an intervening decision of a Louisiana intermediate appellate court).
[5] R. Doc. 1 at 1-3.

respects.[6]  The policies contain both business income ("BI") and extra expense ("EE") provisions, providing additional coverage for lost business income and associated expenses when a covered property must suspend operations because of a "direct physical loss of or damage to property ... caused by or resulting from any Covered Cause of Loss."[7]

On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic.[8]  On March 17, 2020, the Louisiana Department of Health ordered dental clinics to suspend all operations, with the exception of emergency procedures.[9]  Plaintiffs subsequently closed their clinics to conform to the order and submitted business interruption claims to Bankers on March 20, 2020, under the all-risk policies.[10]  The claims sought coverage for lost business income and extra expense resulting from the closure of the clinics due to the pandemic.[11]  On March 28, 2020, Bankers denied Plaintiffs' claims, for the stated reason that they did not suffer "direct physical loss of or damage to" the dental clinics and corporate headquarters covered by the policies.[12]

Between March 12, 2020, and March 16, 2020, Dr. Darrell Bourg, a dentist and managing member of the entities that own and control the clinics and headquarters insured by Bankers' policies, visited all of the covered properties while exhibiting symptoms of COVID-19.[13]  Bourg later tested positive for COVID-19.[14]  Upon learning of Bourg's diagnosis, Plaintiffs urged Bankers to reconsider its denial of their business interruption claims, prompting Bankers to request

---

[6] *See* R. Docs. 10-1 at 1-3; 10-4; 10-5; 10-6.
[7] *See, e.g.*, R. Doc. 10-4 at 24.
[8] R. Doc. 1 at 6.
[9] *Id.* at 7.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 8.
[13] *Id.* at 6-7.
[14] *Id.* at 7-8 (alleging that he learned of the positive test result on March 28, 2020, five days after he tested).

proof of Bourg's illness and information regarding clinic operations following the diagnosis.[15]  On April 9, 2020, Plaintiffs provided Bankers with proof of Bourg's diagnosis and advised Bankers that Bourg had visited the clinics and corporate headquarters while infected with COVID-19.[16]  Following a nearly year-long investigation, Bankers again denied Plaintiffs' business interruption claims on May 13, 2021.[17]

Plaintiffs filed this suit against Bankers on January 3, 2022, seeking a declaration of coverage, damages for breach of contract, and damages under Louisiana Revised Statutes 22:1973 and 22:1892.[18]  Thereafter, Bankers filed the instant motion for summary judgment, maintaining that Plaintiffs cannot establish coverage under the terms of the policies.[19]  While the motion was pending, a Louisiana appellate court handed down its decision in *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, 2022 WL 2154863, at *5-6 (La. App. June 15, 2022), holding that an all-risk commercial property insurance policy with similar BI and EE provisions affords coverage for COVID-19-related business closures, reasoning that the "direct physical loss of or damage to property" language of the provisions was ambiguous.  This Court then ordered the parties to submit supplemental memoranda addressing the applicability of *Cajun Conti* and its effect on the pending motion.[20]

## II.   PENDING MOTION

Bankers argues that Plaintiffs fail to satisfy their burden of establishing coverage under the all-risk policies because they cannot demonstrate that the COVID-19-related clinic closures resulted from "direct physical loss of or damage to" the covered properties, as required by the

---

[15] *Id.*
[16] *Id.* at 8-9.
[17] *Id.* at 9-11.
[18] *Id.* at 11-15.
[19] R. Doc. 10.
[20] R. Doc. 12.

terms of the policies.[21]   In its supplemental briefing, Bankers contends that the decision in *Cajun Conti* fails to justify a departure from the Fifth Circuit's controlling *Erie* analysis "because it is neither a decision of the Louisiana Supreme Court, nor consistent [with] state circuit authority" constituting a majority view.[22]   Bankers emphasizes that the *Erie* analysis detailed by the Fifth Circuit has been reaffirmed by subsequent panels of the court after *Cajun Conti*.[23]

In opposition, Plaintiffs argue that Bankers' policies provide coverage for a suspension of operations precipitated by the COVID-19-related closures of the covered properties.[24]   Plaintiffs maintain that damage to the properties occurred when Dr. Bourg contaminated the clinics by visiting them while infected with COVID-19.[25]   Plaintiffs insist that actual physical damage to the covered properties is not a necessary predicate to receiving business interruption coverage under the policies, arguing that the wording of the BI and EE provisions gives rise to coverage when the insured simply loses the use of the property.[26]   Plaintiffs contend that their loss of use of the properties resulted both from Dr. Bourg's contamination of the clinics and from the government-ordered suspension of operations.[27]   In their supplemental briefing, Plaintiffs assert that *Cajun Conti* controls the Court's *Erie* analysis in the absence of guidance from the Louisiana supreme court.[28]   With *Cajun Conti* controlling, Plaintiffs argue that all-risk policies with similar BI and EE provisions extend coverage to losses resulting from COVID-19-related closures.[29]   Plaintiffs posit that Bankers has not carried its burden of showing that the Louisiana supreme court would

---

[21] R. Doc. 10 at 1.
[22] R. Doc. 13 at 14.
[23] R. Doc. 16 at 1-4.
[24] R. Doc. 11 at 3.
[25] *Id.* at 7.
[26] *Id.* at 8-9.
[27] *Id.* at 9.
[28] R. Doc. 14 at 3-7.
[29] *Id.* at 3.

decide the issue differently than did the intermediate appellate court in *Cajun Conti*.[30]  In the alternative, Plaintiffs ask the Court to stay the proceedings until the Louisiana supreme court acts upon the writ application filed in *Cajun Conti*.[31]

## III.   LAW & ANALYSIS

### A.  Summary Judgment Standard[32]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id.* at 323.  If the moving party meets

---

[30] R. Doc. 15 at 1-3.

[31] R. Docs. 14 at 8-9; 15 at 5-6.

[32] Plaintiffs urge this Court to consider Bankers' motion for summary judgment as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  R. Docs. 11 at 5-6; 15 at 1.  Plaintiffs contend that, since discovery has not started nor a scheduling conference been held, the Court should treat the motion as an untimely Rule 12(b)(6) motion to dismiss (which, inexplicably, is the standard Bankers discusses) that is then converted to a Rule 12(c) motion, because the standards are the same.  R. Doc. 11 at 5.  The Court will analyze Bankers' motion – which is specifically titled one for summary judgment – under Rule 56, as "a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery," provided that such a filing does not conflict with a local rule or court order.  Fed. R. Civ. P. 56(b) (emphasis added); *see also Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) ("'Rule 56 does not require that *any* discovery take place before summary judgment can be granted.'") (quoting *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005)) (emphasis in original).  Because no material facts are in dispute and only issues of law are raised, analysis of the motion for summary judgment under Rule 56 is apt.  Regardless, under either the Rule 56 or Rule 12(c) standard, the same rationale demonstrates that Plaintiffs fail to establish coverage under the policies.

that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such

facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

**B.  Standard for Interpreting Louisiana Insurance Contracts**

The parties do not dispute that Louisiana law governs the interpretation of the insurance policies at issue.[33]  Under Louisiana law, an insurance policy, like any other contract, is construed according to the general rules of contract interpretation set forth in the Louisiana Civil Code.  *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256-57 (5th Cir. 2022) (citing *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638 (La. 2007)). "Courts must first consider the parties' intent by examining the words of the policy."  *Id.* at 257 (citing *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 589 (La. 2007); La. Civ. Code arts. 2045-2046).  In examining the terms of the policy, "'words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning.'" *Id.* (quoting *Sims*, 956 So. 2d at 589).  "'When the words of an insurance contract are clear and unambiguous and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent.'"  *Id.* (quoting *Gorman v. City of Opelousas*, 148 So. 3d 888, 982 (La. 2014)).  A court cannot exercise "inventive powers to

---

[33] *See* R. Docs. 10; 11.

create an ambiguity where none exists or [make] a new contract when the terms express with sufficient clearness the parties' intent." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). Thus, clear and unambiguous policy wording that expresses the parties' intent is enforced as written. *Id.*

Conversely, ambiguous provisions and "equivocal provisions seeking to narrow an insurer's obligation" are strictly construed against the insurer and in favor of coverage. *Id.* However, the strict construction principle applies only if the ambiguous policy provision is susceptible of more than one reasonable interpretation. *Id.* The lack of a definition for a term in the policy does not, by itself, make the term ambiguous. *Am. Deposit Ins. Co. v. Myles*, 783 So. 2d 1282, 1287 (La. 2001) (citing La. Civ. Code art. 2047). "The determination of whether a contract is clear or ambiguous is a question of law." *Cadwallader*, 848 So. 2d at 580. While the insured has the burden of proving that the circumstances constitute a covered claim, the insurer has the burden of proving that any exclusions apply. *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000).

## C.  The *Erie* Guess Framework

Though Louisiana law provides general guidance, it does not specifically provide an analysis of the "direct physical loss of or damage to property" policy language at issue in this case. This is because "[t]he policy language at issue in this case has not yet been interpreted by the Louisiana Supreme Court." *Q Clothier*, 29 F.4th at 257 (citing *Gulf & Miss. River Transp. Co. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488 (5th Cir. 2013)). "Where, as here, the Louisiana Supreme Court has yet to interpret the policy language at issue, [federal courts sitting in diversity are to] make an '*Erie* guess' as to how that court would read it." *Coleman E. Adler & Sons, L.L.C. v. Axis*

*Surplus Ins. Co.*, 2022 WL 4354638, at *2 (5th Cir. Sept. 20, 2022) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)); *see Mary v. QEP Energy Co.*, 24 F.4th 411, 416 (5th Cir. 2022).

In making an *Erie* guess, federal courts applying Louisiana law are required to employ the state's "'civilian methodology, whereby [courts] first examine primary sources of law: the constitution, codes, and statutes.'"   *Chevron Oronite Co. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 225 (5th Cir. 2020) (quoting *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 654 (5th Cir. 2019)).   Absent guidance from primary sources, courts may look to caselaw, which, although persuasive, is nonbinding secondary authority.   *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999); *see also Chevron Oronite*, 951 F.3d at 225 n.5 ("[T]hough decisions of Louisiana's intermediate appellate courts are persuasive authority, they don't strictly bind us.") (citing *Apache Deepwater*, 930 F.3d at 654).   This is true of Louisiana appellate court decisions, "even when [they] rise[] to the level of *jurisprudence constante*." *Prytania Park*, 179 F.3d at 175.   Nevertheless, federal courts should not disregard an intermediate state appellate court decision "'unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"   *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quoting *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000)).

The *Erie* guess presented in this case, however, has already been made by the Fifth Circuit in the COVID-19 context – examining the exact policy language as is at issue here – both before and after the Louisiana appellate court's decision in *Cajun Conti*.   Prior to *Cajun Conti*, the Fifth Circuit in *Q Clothier* concluded that the Louisiana supreme court would interpret "direct physical loss of or damage to property" to mean "only *tangible* alterations of, injuries to, or deprivations of property."   *Q Clothier*, 29 F.4th at 257 (emphasis added).   The court upheld the dismissal of the

plaintiff's COVID-19-related business interruption claim after expressly finding that the "direct physical loss of or damage to property" language was "unambiguous." *Id.* at 258-59. In coming to this conclusion, the Fifth Circuit relied upon other Louisiana appellate court decisions holding that a tangible alteration of the covered property was required to trigger coverage under policies containing the "direct physical loss of or damage to property" language. *Id.* The court distinguished the case before it, which involved a COVID-19-related business interruption loss, from state court cases in which a physical loss was found to exist because the property, though not yet tangibly altered or damaged, would require extensive remediation due to the presence of inorganic lead or toxic drywall in order to become habitable or usable. *Id.* at 258 (citing *Widder v. La. Citizens Prop. Ins. Corp.*, 82 So. 3d 294, 296-97 (La. App. 2011) (inorganic lead); *Ross v. C. Adams Constr. & Design, L.L.C.*, 70 So. 3d 949, 952 (La. App. 2011) (toxic drywall)). In doing so, the Fifth Circuit declined to equate the transient presence of COVID-19 particles in the insured stores to the more ingrained presence of the lead and drywall requiring a very tangible remediation of the structures themselves to eradicate the dangers. In addition, the court reasoned that "Q Clothier's property [was] unchanged by the [government] orders or the close of its stores." *Id.* at 259.

Several months after *Q Clothier*, a Louisiana intermediate appellate court issued its decision in *Cajun Conti*, concluding that the "direct physical loss of or damage to property" language in an all-risk commercial property insurance policy *was* ambiguous and holding that a viable COVID-19-related claim for BI/EE coverage existed after construing the ambiguity in favor of the insured. *Cajun Conti*, 2022 WL 2154863, at *7. The *Cajun Conti* court found that, when read in the disjunctive, "direct physical loss of or damage to property" could reasonably be interpreted to include loss of the full use of the covered property – thus creating an ambiguity as

to whether COVID-19-related business closures constitute a covered direct physical loss of the property.  *Id.* at *6-7.  The divided *Cajun Conti* panel did not reach the question whether contamination by the COVID-19 virus in fact constituted a "direct physical loss of or damage to" the insured property under the all-risk policy.  *Id.* at *3-4.

Notwithstanding the decision in *Cajun Conti*, the Fifth Circuit has twice reaffirmed *Q Clothier*'s *Erie* analysis, reasoning that a single intermediate state appellate court decision did not justify a departure from binding precedent requiring tangible alterations of, injuries to, or deprivations of property to establish coverage under the policy language at issue.  *Coleman E. Adler*, 2022 WL 4354638, at *3; *see also Dickie Brennan & Co., L.L.C. v. Zurich Am. Ins. Co.*, 2022 WL 3031308, at *2 n.1 (5th Cir. Aug. 1, 2022) ("[T]he issuance of an intermediate appellate court decision does not alter our duty to apply the rule of orderliness, so we must follow the sound reasoning of *Q Clothier*.").  As the Fifth Circuit has explained:

> [W]hen [an] *Erie* analysis of controlling state law is conducted for the purpose of deciding whether to follow or depart from prior precedent of this circuit, and neither a clearly contrary subsequent holding of the highest court of the state nor a subsequent statutory authority, squarely on point, is available for guidance, we should not disregard our own prior precedent on the basis of subsequent intermediate state appellate court precedent unless such precedent comprises unanimous or near-unanimous holdings from several – preferably a majority – of the intermediate appellate courts of the state in question.

*FDIC v. Abraham*, 137 F.3d 264, 269 (5th Cir. 1998).  Not only is *Cajun Conti* the lone Louisiana intermediate appellate court to read the pertinent policy language in favor of coverage; even its decision was that of a mere plurality of a very fractured panel.  Accordingly, binding Fifth Circuit precedent mandates the conclusion here that (1) the "physical loss of or damage to property" language of the policies Bankers issued to Plaintiffs is unambiguous and (2) the COVID-19-related businesses closures – whether the result of the alleged contamination or government order – do not constitute a tangible alteration of the property itself.

11

Nevertheless, Plaintiffs argue that *Cajun Conti* still controls the analysis because they specifically pleaded that COVID-19 was present at the covered properties – whereas the complaints in the other COVID-19 business interruption cases did not – and because Louisiana law has long held that "an insured may suffer direct physical loss of or damage to his property without the property showing outward or visible signs of damage."[34]  The Court will turn to these arguments, specifically looking to the policy language at issue in this case.

### D.  Whether the Presence of COVID-19 Constitutes a Direct Physical Loss of or Damage to the Covered Properties as Required Under the Policies

In analyzing the policies at issue in this case, the Court is bound to follow the Fifth Circuit's *Erie* guess outlined in *Q Clothier*.  Like prior COVID-19-related business interruption coverage disputes, the resolution of this motion turns on the interpretation of the "direct physical loss of or damage to property" language in the all-risk policies issued to plaintiffs.  *See, e.g.*, *Coleman E. Adler*, 2022 WL 4354638, at *3; *Q Clothier*, 29 F.4th at 258; *Dickie Brennan & Co.*, 2022 WL 3031308, at *2; *La. Bone & Joint Clinic, L.L.C. v. Transp. Ins. Co.*, 2022 WL 910345, at *1 (5th Cir. Mar. 29, 2022); *Fairview Med. Ctr., LLC v. Cont'l Cas. Co.*, 2022 WL 4311820, at *2 (E.D. La. Sept. 19, 2022); *Port Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co.*, 2022 WL 3576759, at *1 (E.D. La. Aug. 19, 2022).

The policies Bankers issued to Plaintiffs here provide all-risk commercial property insurance coverage for "direct physical loss of or damage to Covered Property ... caused by or resulting from any Covered Cause of Loss."[35]  A "covered cause of loss" is defined as "risks of direct physical loss, unless the loss" is either excluded or limited.[36]  The policies contain BI and EE provisions as additional coverages.  The BI provision states:

---

[34] R. Doc. 14 at 3-7 (quotation at 4).
[35] *See, e.g.*, R. Doc. 10-4 at 22.
[36] *Id.* at 23.

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises ... caused by or resulting from any Covered Cause of Loss.[37]

The EE provision states:

> We will pay necessary Extra Expense you incur during the "period of restoration" that would not have incurred if there had been no direct physical loss or damage to property at the described premises ... caused by or resulting from a Covered Cause of Loss.[38]

The EE provision limits coverage to extra expense "that occurs within 12 consecutive months after the date of direct physical loss or damage."[39] Therefore, all of the relevant policy provisions – the all-risk commercial property insuring clause, the BI provision, and the EE provision – require direct physical loss of or damage to the covered property as a prerequisite to recovery.[40] The policies do not define "direct physical loss of or damage to property," and they do not contain a virus exclusion.

The Fifth Circuit in *Q Clothier* agreed with the district court in declining to interpret the policy language "direct physical loss of or damage to property" to include business interruption losses resulting from COVID-19. *Q Clothier*, 29 F.4th at 258-59. In arriving at this conclusion, the district court indicated that the virus exclusion in the policy made no difference. *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 535 F. Supp. 3d 574, 583 (E.D. La. 2021). To be sure, in decisions after *Q Clothier*, courts have held that the all-risk policies at issue did not provide coverage for business closures due to COVID-19 even when the policies did *not* contain virus

---

[37] *Id.* at 24.
[38] *Id.* at 24-25.
[39] *Id.* at 25.
[40] The policies also contain an "ordinance or law" exclusion, barring recovery for "loss or damage caused directly or indirectly" by "[t]he enforcement of any ordinance or law ... [r]egulating the construction, use or repair of any property ..." as well as a "governmental action" exclusion, barring recovery for "loss or damage caused directly or indirectly" by the "[s]eizure or destruction of property by order of governmental authority," except when done to prevent the spread of a fire otherwise covered by the policies *Id.* at 26. Because the parties have not addressed these exclusions, the Court does not do so.

exclusions. *See Dickie Brennan & Co.*, 2022 WL 3031308, at *1 (affirming denial of insurance coverage for business interruption claims related to COVID-19 where policy did not contain a virus exclusion); *Fairview Med. Ctr.*, 2022 WL 4311820, at *2 (dismissing COVID-19-related business interruption claims where policy did not contain a virus exclusion); *Port Cargo Servs.*, 2022 WL 3576759, at *1 (same).  After the decision in *Cajun Conti*, the Fifth Circuit in *Coleman E. Adler* reaffirmed its *Q Clothier* holding.  In rejecting the insured's argument that *Cajun Conti* supported a departure from the court's *Erie* guess in *Q Clothier*, the Fifth Circuit observed:

> No exception to the rule of orderliness applies here.  Since *Q Clothier*, there has been "neither a clearly contrary subsequent holding of the highest court of Louisiana nor a subsequent statutory authority, squarely on point."  Nor has there been contrary intervening precedent that "comprises unanimous or near-unanimous holdings from several – preferably a majority – of the intermediate appellate courts of Louisiana."

*Coleman E. Adler*, 2022 WL 4354638, at *3 (quoting *Abraham*, 137 F.3d at 268-69) (alterations and internal citation omitted).  The same conclusion applies here.  Since *Coleman E. Adler*, there has been neither a clearly contrary subsequent holding of the Louisiana supreme court nor the adoption of a contrary statutory authority.  Nor has there been any relevant intervening decision of an intermediate state appellate court, much less contrary holdings from a majority of them, such that a departure from controlling precedent is justified.  Thus, with the decision in *Cajun Conti* standing alone on the relevant legal proposition, this Court declines to ignore the Fifth Circuit's *Erie* analysis and holdings squarely on point.  Because COVID-19-related business closures do not constitute "direct physical loss of or damage to property," even if the policies do not contain a virus exclusion, plaintiffs have failed to satisfy their burden of "proving that the circumstances constitute a covered claim." *Doerr*, 774 So. 2d at 124.

Plaintiffs' other attempt to distinguish the case at bar is likewise unpersuasive.  Plaintiffs assert that their claims should survive dismissal because they specifically pleaded that, given Dr.

Bourg's positive diagnosis, COVID-19 physically intruded and contaminated the covered properties.[41]   But Plaintiffs fail to address Fifth Circuit precedent upholding the dismissal of COVID-19-related business interruption claims that did allege the physical presence of virus particles in the covered properties.  *See, e.g.*, *Coleman E. Adler*, 2022 WL 4354638, at *3; *Dickie Brennan & Co.*, 2022 WL 3031308, at *2.  Aside from this, Plaintiffs' argument remains a distinction without a difference, as alleging the physical, transient presence of COVID-19 does nothing to overcome the policies' unambiguous requirement (as expressly found by the Fifth Circuit) that the virus create a physical, tangible alteration to the covered properties in order to trigger coverage.  Plaintiffs have simply "not alleged that the coronavirus physically damaged or contaminated [the] property *such that it needed to be repaired or replaced*."  *Coleman E. Adler*, 2022 WL 4354638, at *3 (emphasis added).

Finally, Plaintiffs' argument that Louisiana jurisprudence, particularly in toxic drywall cases, has long held that "an insured may suffer direct physical loss of or damage to his property without the property showing outward or visible signs of damage" is inapposite.[42]  This is because the Fifth Circuit – in its controlling *Erie* analysis – has rejected equating COVID-19-related business closures to the type of physical losses found in the toxic drywall cases:

> Like the *Q Clothier* plaintiff, Adler strains to equate its pandemic losses to the property losses in Chinese drywall cases.  *See Q Clothier*, 29 F.4th at 259; *see also, e.g., In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 831-32 (E.D. La. 2010).  Adler contends that, like drywall-related losses, his losses were caused by [] "the presence of ... coronavirus particles" and infected persons, rendering its property unusable.  *Q Clothier* rejected that argument.  Unlike losses arising from pandemic closure orders, drywall losses arose because the defective drywall emitted sulfur gases, making the property "unusable or uninhabitable" until the drywall was "removed and replaced in the property."  *Q Clothier*, 29 F.4th at 259.

---

[41] R. Doc. 14 at 5-6.
[42] *Id.* at 4.

*Coleman E. Adler*, 2022 WL 4354638, at *3.  On this same basis, the Court chooses to follow the *Q Clothier* analysis.  In sum, Plaintiffs' attempts to distinguish this case from binding precedent fall well short.

**E.  Whether the Court Should Stay the Proceedings to Await Guidance from the Louisiana Supreme Court**

In the alternative, Plaintiffs urge the Court to stay the proceedings and postpone ruling on Bankers' motion until the Louisiana supreme court acts on a pending writ application filed in *Cajun Conti*.[43]  Plaintiffs argue that deferral is appropriate because this circuit's controlling *Erie* guess will no longer be applicable should the Louisiana supreme court grant the writ and affirm the appellate court's decision in *Cajun Conti*.[44]  Nonetheless, because the Fifth Circuit has continued to reaffirm the *Erie* guess it outlined in *Q Clothier*, even after *Cajun Conti* and in the face of its *potential* review by the state's highest court, *see, e.g.*, *Coleman E. Adler*, 2022 WL 4354638, at *3 n.5 (denying motion to certify the legal question to the Louisiana supreme court); *Dickie Brennan & Co.*, 2022 WL 3031308, at *3 (same), this Court finds that Bankers' motion is ripe for decision and declines Plaintiffs' request for deferral.

**IV.  CONCLUSION**

*Q Clothier* and its progeny mandate the conclusion that (1) the policy language at issue in this case, "direct physical loss of or damage to property," unambiguously requires tangible alterations of, injuries to, or deprivations of covered property to trigger coverage; and (2) COVID-19-related business closures – either due to government order or the presence of the virus on covered property – do not give rise to recoverable losses under the Bankers policies.  As Plaintiffs bear the burden of proof that their claims are covered by the insurance policies, and because they

---

[43] R. Docs. 14 at 8-9; 15 at 5-6.
[44] R. Doc. 15 at 5-6.

have not shown the existence of any genuine issue of material fact that a covered loss occurred, summary judgment in favor of Bankers is appropriate on the question of coverage.  Without a valid claim for insurance coverage, there can be no claim for breach of contract or statutory penalties. *See, e.g.*, *Phillips v. Patterson Ins. Co.*, 813 So. 2d 1191, 1195 (La. App. 2002) (claim for statutory insurance penalties depends upon a "valid underlying insurance claim").

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of defendant Bankers Insurance Company for summary judgment (R. Doc. 10) is GRANTED and that Plaintiffs' claims are DISMISSED with prejudice.

New Orleans, Louisiana, this 30th day of September, 2022.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE